**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION**

| | | |
|---|---|---|
| JAMES LAMBERT, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 1:16-cv-02783-STA-egb |
| | ) | |
| GRADY PERRY, | ) | |
| | ) | |
| Respondent. | ) | |

**ORDER GRANTING MOTION TO DISMISS,
DENYING CERTIFICATE OF APPEALABILITY,
AND
DENYING LEAVE TO APPEAL *IN FORMA PAUPERIS***

Petitioner, James Lambert, has filed an amended *pro se* habeas corpus petition under 28 U.S.C. § 2254 ("Amended Petition"). (ECF No. 22.) Before the Court is the motion of Respondent, Grady Perry, to dismiss the Amended Petition. (ECF No. 23.) For the following reasons, the motion is **GRANTED.**

## BACKGROUND

In February 2012, a McNairy County, Tennessee, jury convicted Lambert of rape of a child, aggravated sexual battery, and incest. (ECF No. 14-1 at 15-17.) The trial court sentenced him to an effective sentence of twenty-five years' incarceration. (*Id.* at 15.) On direct appeal, the Tennessee Court of Criminal Appeals ("TCCA") affirmed the convictions. *State v. Lambert*, No. W2012-01681-CCA-R3-CD, 2013 WL 3131004, at *3 (Tenn. Crim. App. June 14, 2013). Lambert did not seek discretionary review before the Tennessee Supreme Court.

On June 12, 2014, Petitioner submitted a *pro se* state post-conviction petition to prison authorities for mailing. (ECF No. 14-8 at 3, 12.) The post-conviction trial court appointed counsel

1

to represent Lambert and held an evidentiary hearing. (ECF No. 14-9.) The court denied relief and the TCCA affirmed. *See Lambert v. State*, No. W2015-00238-CCA-R3-PC, 2015 WL 6122144, at *11 (Tenn. Crim. App. Oct. 15, 2015). Petitioner did not seek discretionary review in the Tennessee Supreme Court.

Lambert submitted his federal habeas petition ("Petition") to prison authorities for mailing on September 28, 2016. (ECF No. 1 at 12.) He asserted the following ineffective-assistance-of-counsel claims:

1. Trial counsel "ignored direction of judge to subpoena witnesses material to the defense."

2. Trial counsel "did not object to prosecutor trying case due to conflict of interest pointed out by judge."

3. Trial counsel "did not investigate beyond the scope of the discovery provided by the State."

4. Trial counsel "lied regarding availability and location of witnesses."

5. Trial counsel "used poor judgment when determining if witnesses had knowledge of events."

6. Trial counsel "did not admit forensic interview from victim showing her story was inconsistent."

(ECF No. 1 at 5.)

In December 2016, the Court denied Petitioner's motion for appointment of counsel and ordered Respondent to respond to the Petition. (ECF No. 7.) Respondent thereafter filed the state court record and a motion to dismiss the Petition as untimely. (ECF No. 14; ECF No. 15.) Petitioner opposed dismissal on the grounds that he is entitled to equitable tolling of the limitations period because he is functionally illiterate and was without his legal papers. (ECF No. 16 at 1-3.)

By order dated September 27, 2017, the Court found that the Petition was filed more than 200 days beyond the expiration of the limitations period. (ECF No. 18 at 3.) However, Petitioner

was granted leave to file an amended petition for the purpose of answering Question 18 on the Court's official habeas petition form. Question 18 requires a petitioner to explain why the petition should not be dismissed if it is filed beyond the expiration of the limitations period. The Court specifically directed Lambert to "provide factual details about when and why he was without access to his legal materials, how his limited literacy caused him to file his Petition late, and his efforts to overcome these limitations and file on time." (ECF No. 18 at 4.)

On December 22, 2017, Lambert filed his Amended Petition, in which he reasserts the same six claims set forth in the Petition, and two new claims of attorney ineffectiveness: Trial counsel failed to "introduce evidence that showed that the alleged victim[']s friend had a history of lying" and failed to seek the admission of "specific evidence" that the victim "lie[d]" about abuse in the past. (ECF No. 22 at 5.) With the help of a prison legal aide, Petitioner sets forth in Question 18 his explanation for his late filing, supported in part by documents attached as exhibits. (*Id.* at 11-15; ECF No. 22-1.)

## DISCUSSION

Respondent has moved to dismiss the Amended Petition on the ground that the original Petition was filed late and that Petitioner has not alleged facts that would entitle him to equitable tolling. (ECF No. 23; ECF No. 23-1 at 1.) Although allowed to file a response to the motion to dismiss (ECF No. 18 at 5), Petitioner did not do so.

### 1. Legal Standards

A § 2254 petition is subject to a one-year statute of limitations. 28 U.S.C. § 2244(d)(1). The limitations period begins to run from four possible dates:

>  (A)    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B)     the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C)     the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D)     the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

*Id.*

The one-year limitations period may be subject to statutory tolling pursuant to 28 U.S.C. § 2244(d)(2). Such tolling is applied during the time "a properly filed application for State post-conviction or other collateral review . . . is pending . . . ." 28 U.S.C. § 2244(d)(2).

The § 2254 limitations period may also be subject to traditional equitable tolling. *Holland v. Florida*, 560 U.S. 631, 645 (2010). A petitioner seeking traditional equitable tolling bears the burden of demonstrating that he has been "pursuing his rights diligently" and that "some extraordinary circumstance stood in his way and prevented timely filing." *Id.* at 649 (internal quotation marks omitted). In determining whether those elements have been established, a court must be mindful of the Sixth Circuit's "repeated[] caution[] that equitable tolling should be granted 'sparingly.'" *McSwain v. Davis*, 287 F. App'x 450, 456 (6th Cir. 2008) (quoting *Solomon v. United States*, 467 F.3d 928, 933 (6th Cir. 2006)).

The limitations period may also be "overcome" on a gateway claim of actual innocence. *McQuiggin v. Perkins*, 569 U.S. 383, 388, 392-93 (2013). A claim of actual innocence must be supported with new evidence from which the court could conclude that "'it is more likely than not that no reasonable juror would have convicted'" the petitioner *Id.* at 399 (quoting *Schlup v. Delo*, 513 U.S. 298, 327) (1995).

## 2. Lambert's Limitations Period

In this case, § 2244(d)(1)(A) applies. Petitioner thus had one-year from the date on which his convictions became final to file his federal Petition. Taking into account statutory tolling under 28 U.S.C. § 2244(d)(2), the last day he could timely file a § 2254 petition was February 16, 2016. The date is arrived at as follows.

Petitioner appealed his convictions to the TCCA, but did not appeal to the Tennessee Supreme Court. His judgments of conviction thus became final when the time for appealing to the Tennessee Supreme Court expired, which was sixty days after the TCCA denied relief on June 14, 2013. *See Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012) (a petitioner's judgment becomes final "when his time for seeking review with the State's highest court expire[s]"); Tenn. R. App. P. 11(b) ("The application for permission to appeal shall be filed with the clerk of the Supreme Court within 60 days after the entry of judgment of the . . . Court of Criminal Appeals."). Sixty days after June 14, 2013, was Tuesday, August 13, 2013.

The limitations "clock" for Lambert's federal habeas claims commenced the next day, August 14, 2013, *see Bronaugh v. Ohio*, 235 F.3d 280, 285 (6th Cir. 2000), and was stopped on June 12, 2014, when Petitioner filed his state post-conviction petition. *See* 28 U.S.C. § 2244(d)(2). By that point, three-hundred and two days of the limitations period had passed.

The limitations period remained statutorily tolled until the termination of the post-conviction proceedings. As noted, Petitioner did not appeal the TCCA's denial of post-conviction relief. The post-conviction proceedings thus ended when Petitioner's right to seek discretionary review in the Tennessee Supreme Court expired, which was sixty-days after the TCCA denied relief on October 15, 2015. *See* Tenn. R. App. P. 11(b). Sixty days from that date was Monday, December 14, 2015.

When the limitations "clock" resumed running the next day, December 15, 2015, sixty-three days (365 minus 302) remained in the limitations period. Sixty-three days from December 15, 2015, was Tuesday, February 16, 2016. As noted, Petitioner submitted his Petition to prison authorities on September 28, 2016. His Petition is thus untimely by 225 days.

### 3. Traditional Equitable Tolling

Lambert does not dispute that the Petition is untimely, but argues that he is entitled to traditional equitable tolling. He asserts that he was unable to file the Petition before the limitations period expired because "[i]n 2012 his legal paperwork was taken by other inmates," his post-conviction counsel refused to give him copies of his file, and his family members were unsuccessful in securing copies of the state court record from the county clerk of court. (ECF No. 22 at 13-14.) He alleges that "he still does not have all of his legal paperwork." (*Id.* at 13.)

Petitioner also asserts that he is "functionally illiterate" and therefore needed assistance to prepare his Petition. (*Id.*) He claims, however, that access to a prison library aide was "difficult to obtain" in "the protective custody unit" where he is housed. (*Id.*) He explains that "the legal aid[e] in the protective custody unit has to meet the needs of 256 inmates and he does not have the time or resources to assist all inmates effectively." (*Id.* at 12.) He further alleges that he met with two legal aides but they did not followed-up with him. (*Id.* at 15.)

As a general matter, a prisoner's illiteracy, limited access to legal aides or resources, and lack of access to legal papers or the state court record are not, standing alone, extraordinary circumstances. *See Hill v. Warden, Lebanon Corr. Inst.*, 662 F.3d 745, 751 (6th Cir. 2011) ("[A] lack of access to the trial transcript is not the kind of 'extraordinary circumstance' that stands in a petitioner's way and prevents a timely habeas filing."); *Cobas v. Burgess*, 306 F.3d 441, 444 (6th Cir. 2002) (holding a habeas petitioner has no constitutional right to an attorney or other legal

assistance and his "lack of legal training, his poor education, or even his illiteracy does not give a court reason to toll the statute of limitation."); *Grayson v. Grayson*, 185 F. Supp. 2d 747, 751 (E.D. Mich. 2002) (holding denial of access to legal materials was not an exceptional circumstance warranting equitable tolling). Nevertheless, on rare occasions when a petitioner's "partial[] illitera[cy]" is coupled with other conditions, such as serious medical needs and separation from legal papers, the petitioner may be said to have faced an extraordinary circumstance. *Jones v. United States*, 689 F.3d 621, 627 (6th Cir. 2012).

### *Limited Literacy and Lack of Assistance*

For purposes of the present analysis, the Court assumes that a petitioner's lack of access to assistance to overcome his partial illiteracy constitutes an extraordinary circumstance. The Court also assumes that Lambert is partially illiterate.[1] The Court finds, however, that he has not shown that he was denied access to assistance or that he exercised reasonable diligence in seeking help. *See e.g.*, *Levy v. Osborne*, No. 17-5050, --F. App'x--, 2018 WL 2329736, at *2 (6th Cir. May 23, 2018) (declining to decide whether the petitioner's "inability to read and understand English, coupled with the denial of access to translation or legal assistance, . . . constitute[d] an extraordinary circumstance," where the petitioner failed to establish his diligence in seeking assistance).

Petitioner's allegations do not suggest that he was denied access to persons who could help him with reading and writing tasks, or even legal research. Although the legal aide in the protective custody unit must serve 256 inmates, Petitioner has not alleged that he was unable to meet with

---

[1] Petitioner does not allege that he has no ability to read or write, but that he has "great difficulty reading and understanding anything in written form." (ECF No. 22 at 11.) At his post-conviction hearing, he testified that he has a sixth-grade education, is "somewhat illiterate," and "can read but . . . just can't write that well." (ECF No. 14-9 at 56.)

the aide or ask the aide questions. He only alleges generally that the aide "does not have the time or resources to assist all the inmates effectively." (ECF No. 22 at 12.) He also admits that a "law library aid[e]" was available "to assist him" with the "legal computer in the protective custody unit." (Id.)

Petitioner further admits that he was able to secure the help of an "inmate legal aid[e] in the protective custody unit [to] assist[] [him] in filing his initial habeas petition." (*Id.* at 15.) He does not state that the assistance was unavailable at an earlier time, just that it was "difficult to obtain." (*Id.* at 13.) Notably, he does not explain why he was able to secure that assistance after the limitations period expired, but not before.[2]

Petitioner also does not describe reasonable diligence in seeking assistance during the limitations period and during the seven months after the limitations period expired.[3] He states that he "spoke to his case manager and wrote to the legal library for help" when the legal aide who was helping him with his application for permission to appeal to the Tennessee Supreme Court was transferred to another facility. (ECF No. 22 at 14-15). He does not, however, describe similar efforts regarding the preparation of his federal Petition. He also does not state how many times he formally or informally asked for assistance with his Petition and what responses he received.

Lambert also complains that "[i]nmate legal aid[e]s from the main compound came to consult with [him] on two occasions but never followed up with any of the help they said that they

---

[2] To the extent Lambert complains that the prison legal aides have no "legal training," he is in no worse position than most inmates. A prisoner is not entitled to the assistance of an attorney and his "lack of legal training . . . does not give a court reason to toll the statute of limitations." *Cobas*, 306 F.3d at 444.

[3] Petitioner does not suggest that he did not "understand the need for assistance." *Stiltner v. Hart*, 657 F. App'x 513, 521 (6th Cir. 2016). To the contrary, he asserts generally that he diligently sought help.

would provide." (*Id.* at 15.)  But he does not identify when those occasions occurred and if they related to the preparation of his federal Petition.  *See Levy*, 2018 WL 2329736, at *3 ("[N]one of [petitioner's] asserted acts of diligence pertained to federal habeas relief in particular.")  He also does not describe what he did to secure assistance when he realized that the aides were not following up with him.

With regard to assistance by persons outside of the prison, Lambert alleges that he recruited family members to help him secure copies of transcripts and other documents.  He does not, however, state that he asked those family members for help in determining how much time he had to file his Petition or for assistance in preparing it.  In short, Petitioner does not allege that he was persistent in asking others for help.  *See e.g., Jones*, 689 F.3d at 627 (finding that partially illiterate petitioner was diligent in seeking help with the preparation of his federal habeas petition where he "constantly question[ed] others . . . on how to challenge his convictions").  At best, Lambert's own allegations suggest that he engaged in minimal efforts to pursue his federal habeas rights.

The Court therefore finds that Petitioner has not shown that, despite reasonable diligence, his partial illiteracy and limited access to assistance caused a seven-month delay in filing his Petition.

*Lack of Legal Paperwork*

Petitioner alleges that "[i]n 2012 his legal paperwork was taken by other inmates" because prisoners, like him, who have been convicted of child rape and incest "are targeted for extortion as well as . . . harass[ment]."  (ECF No. 22 at 13.)  He also alleges that his family members have tried to secure copies of the trial transcript and other documents from the state court clerk, but they could not afford to pay the copying cost.  His efforts to obtain the state court record without

payment of fees were unsuccessful.  (*Id.* at 13-14.)  He supports his allegations with documentary evidence.  (ECF No. 22-1 at 4-8, 12, 16-25.)

Lambert also alleges that he was unable to secure a copy of his file from his post-conviction counsel.  In support, he submits copies of letters he and his post-conviction counsel exchanged following the TCCA's denial of post-conviction relief.  In a letter dated October 30, 2015, he requested that counsel send him "any and all Transcripts of Evidence, motions, briefs, court orders or opinions, Discovery Packet, and any exculpatory evidence, etc., that you may have produced and/or may have in your possession" so that he could prepare an application for permission to appeal to the Tennessee Supreme Court.  (ECF No. 22-1 at 27.)  By letter dated November 11, 2015, counsel promised that she would mail a copy of the voluminous file within ten days.  (ECF No. 22-1 at 14.)  Peitioner claims that counsel never sent him the requested documents.

Lambert has failed to show that a lack of legal paperwork prevented him from timely filing his Petition.  Even assuming that inmates stole his legal papers in 2012, Petitioner admits that, in 2015, his post-conviction counsel sent him some records.  (ECF No. 22 at 14.)  As to the ones that allegedly were not sent, he does not identify what they were and why they were necessary to his preparation of the Petition.

Petitioner likewise does not specify which of the state court records that his family members tried to obtain for him were indispensable, and why he believes they were so.  In fact, Petitioner continues to complain that he "still does not have all of his legal paperwork," although he was able to prepare and file his Petition, as well as his Amended Petition, without those unidentified papers.  *See e.g.*, *Hall*, 662 F.3d at 751 (holding petitioner's inability to secure transcript was not an extraordinary circumstance since he "ultimately filed his petition without ever having received the transcript").

At bottom, Petitioner does "not explain satisfactorily how the lack of his legal materials prevented him from timely filing his habeas corpus petition." *Bowling v. Lee*, No. 2:17-cv-35-RLJ-MCLC, 2018 WL 1598789, at *5 (E.D. Tenn. Mar. 30, 2018) (denying petitioner's request for equitable tolling).

For all of these reasons, the Court finds that Petitioner has not carried his burden to show that, despite reasonable diligence, extraordinary circumstances caused him to file the Petition seven months after the limitations period expired. *See e.g.*, *Allen v. Yukins*, 366 F.3d 396, 404 (6th Cir. 2004) (where petition was filed seven months late, holding that "the length of [the] delay does not support the application of equitable tolling; in fact, the length of [the] delay actually suggests that equitable tolling is not appropriate in this case."); *see also Jones*, 689 F.3d at 627 (holding equitable tolling applied where partially illiterate inmate who experienced numerous transfers and serious medical conditions "missed the one-year deadline by less than three months"); *Solomon*, 467 F.3d at 933-34 (holding equitable tolling applied where petitioner exercised reasonable diligence by filing his petition one month after he was returned to his regular place of incarceration).

### 4. Actual Innocence

Petitioner argues that he can overcome the statute of limitations because he is actually innocent of the crimes for which he was convicted. In support, he alleges that certain state court documents or evidence will demonstrate his innocence, but that he has been unable to secure copies of them.

As noted, a petitioner asserting a gateway claim of actual innocence must show that, in light of new evidence, "it is more likely than not that no reasonable juror would have convicted" him. *McQuiggin,* 569 U.S. at 399 (internal quotation marks omitted). Petitioner, here, has not

identified any such evidence. In addition, his allegation that he has not received documents that would show his actual innocence does not help him, as he has not identified the documents, described what he believes they will demonstrate, or even alleged that they represent "new" evidence.

Accordingly, Petitioner has failed to establish a gateway claim of actual innocence.

For all of these reasons, the Court finds that the Petition was not timely filed and no reasons exist to excuse the late filing.

The Amended Petition is therefore **DISMISSED**.

## APPEAL ISSUES

A § 2254 petitioner may not proceed on appeal unless a district or circuit judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A COA may issue only if the petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2)-(3). A "substantial showing" is made when the petitioner demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell,* 537 U.S. 322, 336 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). "If the petition was denied on procedural grounds, the petitioner must show, 'at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" *Dufresne v. Palmer*, 876 F.3d 248, 252-53 (6th Cir. 2017) (quoting *Slack*, 529 U.S. at 484).

In this case, reasonable jurists would not debate the correctness of the Court's decision to dismiss the Amended Petition. Because any appeal by Petitioner does not deserve attention, the Court **DENIES** a certificate of appealability.

Pursuant to Federal Rule of Appellate Procedure 24(a), a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a). However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, the prisoner must file his motion to proceed *in forma pauperis* in the appellate court. *Id.*

In this case, for the same reasons it denies a COA, the Court **CERTIFIES**, pursuant to Rule 24(a), that any appeal in this matter would not be taken in good faith. Leave to appeal *in forma pauperis* is therefore **DENIED**.

**IT IS SO ORDERED**.

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
CHIEF UNITED STATES DISTRICT JUDGE

Date: June 13, 2018.